The next case is United Financial Casualty v. Countrywide Insurance. Good morning, Your Honors. My name is Lawrence J. Rabinovich Barclay-Damon for the appellant, United Financial, which I will inevitably refer to as progressive. We turn to the world of insurance now. There are multiple layers peeling the onion away here, so if I may cut to the bottom and then be happy to respond to earlier layer questions. The bottom line here is that my client believes that New York Insurance Law 3420D2 didn't apply in this context. In fact, to this date, my client has received no explicit statement, besides certain hints in the briefing, no explicit statement from Countrywide that Countrywide, in fact, covers this loss. And under the law of the state of New York, this court actually was involved in that process by referring the Royal Insurance case to the New York Court of Appeals, a case that we were involved in. As a result of all that, those 20 years' worth of litigation, there has been a final determination under New York law that this contingent endorsement, otherwise known as the non-trucking endorsement, is only applicable, can only be enforced, if it itself is made contingent on the existence of other coverage, and in fact, other coverage actually exists. That was something you had to find out. We sort of needed to find that out, and it wasn't for lack of trying. You know, I jokingly said that if anyone had a 3420 problem here, it should be Countrywide, not Progressive, which actually… Well, your insured had a duty of cooperation. Why didn't you just direct insured to turn over the underlying policy or policies? So our named insured was T.F. Victor's. The Countrywide insured, ITG, was the motor carrier with which we had no relationship. So our insured did not have a copy of that policy. Now, it is true, completely true, that because of the federal regulatory system that the U.S. DOT has in place, we were able to figure out that Countrywide had issued something that is at least this filing, which generally goes together with an insurance policy, but we were not in a position to know what the insurance policy actually said. And as we pointed out in the briefing repeatedly, the notion that Countrywide had certain exposures is not enough. New York Court of Appeals said that in several cases over the 20-year period where this issue was bubbling up. They repeatedly said that the fact that there's a filing is not enough. In fact, the case that this Court sent over there, we were on the losing end of that case, and that's what the Court of Appeals said, not good enough. And in fact, I suspect you can argue that that's sort of prosthetic, because in this case, had we done that, in July of 2016, when we knew that Countrywide had made a filing, had Progressive written to the insured, instead of issuing a reservation of rights letter, which we did, had we said, you know what? Countrywide, they've issued a filing. Their insurance company is probably going to pick this up. Therefore, we're denying coverage. You go talk to them because they have a filing. Well, that would have turned out to be incorrect and would have exposed us to arguments of bad faith and improper claims handling, because it turns out that the Federal system here would not, the Federal filing is completely irrelevant in this context, A, for at least two reasons, but A, because there was an intrastate load, which didn't generate any Federal exposure, and B, because for whatever reason, we don't know, nobody knows, the underlying plaintiff opted not to sue the motor carrier. He didn't even sue our named insured. All these, the only one that was sued on our side of the ledger was the driver. And the case law, again, very clear that the MCS 90 endorsement in the Federal filing has no applicability at all to a judgment and against the driver. So you need to find out if IPG's policy would cover the driver. That's the bottom line. It needed to cover the vehicle, and it needed to cover the driver. And there's no way of knowing that until either they told us, which they didn't, or we saw the policy. And you contacted them in July, repeatedly, August, September, October. They don't tell you anything. So between July and October, the contacts were made by my client. He apparently had the name of somebody there, and there was never a response. In October, he hired us. Our firm was hired in October, and we did the same thing. We wrote to them and heard back, as the record shows. January 4th was the first one. It said, please send us your policy. We did. We said, please send us your policy. They didn't. And then about 10 days later, they write back and say, no coverage. So the short answer is 3420 is clearly not applicable to my client in this case. And therefore, the Court, so holding, we believe committed an error as a matter of law. Good morning. May it please the Court. My name is Thomas Torto. I represent Countrywide. It's our position that the district court promptly concluded that the attempt by United Financial to avoid its coverage obligations, in this case, was barred by its failure to promptly serve a disclaimer, as required by Insurance Law 3420. How could it serve a disclaimer if it didn't know whether your client's policy would cover the accident? Well, we submit that they did know as early as July 17th of 2000, July 13th of 2016, in their tender letter, in their reservation of rights letter that they sent to their insured, they state, it's at page 331 of the appendix, quote, international trucking has an insurance policy with Countrywide Insurance, which we feel should provide you with a defense and identification for this loss. We have sent them a letter requesting that they do the same on July 7th, 2016. We have yet to receive a response from them. They knew that Countrywide would Wait, wait, wait. We have yet to receive a response. Response, yes. Well, I mean, that's rather unprofessional and disreputable. Perhaps they should have responded to it. Perhaps they should have responded. I can't explain why they didn't respond. How can they possibly, if they disclaimed coverage without seeing the underlying policy, then they would be violating their own policy, which says they cover unless there is underlying coverage. They don't know whether your policy has exclusions. They don't know whether it has exceptions to exclusions. What they should have done, they should have done, and disclaimed without prejudice to their right to defend their insured, and defended their insured without prejudice to their disclaiming. And how would that have helped you, your client? Well, my client is International Trade. Their client is P.F. Victors and the driver, Mr. Pineda. How would it have helped your insurance client? It wouldn't have any bearing on my client, per se. But under the case law we cited, the Petelius case, when in doubt, an insurer should issue a prompt disclaimer and seek a declaratory judgment, rather than seeking a judgment in lieu of a disclaimer. So they should have started a declaratory judgment action instead of sending you repeated letters asking for copies of your policy so they could know whether they have coverage. No, they should have issued a disclaimer. And so how is countrywide prejudice in any way by this? Because this is an attempt by United Financial to rely on an exclusion from coverage in its policy, and they tendered the defense and indemnity of their insurer to countrywide, which triggers the obligation to promptly disclaim. That's under the J.T. Maggie case that we cited in our brief. How does it advance the general welfare for them to have issued a disclaimer instead of demanding your policy and waiting to decide whether they can disclaim until they know categorically whether they have coverage? That's the law in New York State, the insurance companies. Well, that's the law in New York State to protect insurers. But where is it written that that protects insurers? It protects other insurers. I mean, all your client had to do was respond to a civil letter asking for a copy of your policy. Right. Actually one letter after another letter after another letter. I don't understand how your client can claim to be prejudiced by anything except your neglect of a responsibility to another insurance company. And your regulated industry. Right. And countrywide, the existence of countrywide insuring international trade is on file with the federal government. In fact, it was cited in the appendix. They know this. This is standard motor carrier policy. And that's why they didn't need to see countrywide policy to disclaim. That's self-serving. You know, they admit in their papers below, Judge Jacobs, that the measuring point is January 13, 2017 when countrywide sent a letter rejecting the tender. That's when they had an obligation to disclaim. And you measure from then. Judge Hall said, okay, you should be generous about it. You start your declaratory judgment action on March 6 of 2017, that's 52 days, assuming that your disclaimer action serves as a disclaimer required by the statute. That's untimely. Now they're saying, well, we couldn't really do anything until we got a copy of their policy and we conducted a deposition of the parties. They knew all this. It's all self-serving enough. And I submit that the courts below probably saw through this and held that there's a waiver of their attempt to disclaim their obligation. Remember, this is their insured TF victors. Countrywide doesn't insure TF victors. They insure international trade groups. And they're looking to shift the loss to countrywide. If they want to do that, they've got to disclaim because their trucking endorsement contains an exclusion from coverage. But it would appear that the only issue in front of us now is whether this requirement of prompt disclosure applies with respect to one insurance carrier dealing with another one. I mean, they didn't disclaim. In fact, they're covering. So why would they disclaim? Why would they disclaim when they're prepared to cover if there is no underlying insurance? In fact, they're obligated to cover if there is underlying insurance. They want to disclaim. They want to avoid the obligation to cover. They've got to disclaim. Otherwise, they're primary. I mean, that's basic. And the notion here, this argument that 3420 doesn't apply to carriers, that's a new argument that they've raised for the first time. What they argued below. Well, what good does it do? How does it advance anything for it to apply it to carriers? Because there's a distinction. I mean, if they had never sent a letter to you, then it's possible if they hired an incompetent lawyer who yielded a terrible judgment, you might say they never contacted us and they should have disclaimed or whatever. But, I mean, you had noticed that this was ongoing, and if you wanted to come in and defend you could have done that. I just don't see what the notice to you would add, what the disclaimer would do for you. In an imagined case, the appellate division, distinguished between an insurer's own claim for a defense and indemnity and a tender letter by an insurer on behalf of its insured. The latter requiring a prompt disclaimer, and that's what happened in this case. They made a tender on behalf of their insured, TF Victors and Defendant Panetta. That triggered the obligation to disclaim. And their primary contention that they have to wait until they verify coverage by Countrywide is incorrect under New York law. There's a Bastelli case and there's a Vinci case. They can't delay a disclaimer indefinitely until all issues of fact have been resolved with regard to insurance coverage. But if their own coverage is dependent upon what your client offered, if their exclusion is ineffective unless there is the gap filler, and Royal holds that, how can they responsibly and ethically take a position? They still have to disclaim. The proper way to handle it, my position is, and this is what I advise my insurance company clients, is that you issue a disclaimer, disclaiming the obligation to defend and identify, but without prejudice to the disclaimer, the carrier will assume the defense of its insured in the underlying action. They didn't do that here. What they did is they issued a reservation rights letter, which does not serve as the disclaimer required by New York law. It's a technical requirement. If they undertook the defense, subject to that disclaimer, then that defense would, in the usual disclaimer letter, only continue as long until they could prove that they did not have coverage. And in order to do that, they would need a copy of your policy, which countrywide was not sending them. How can they go to a court and say that under the policy that they issued, that they have no coverage and they're defending under a reservation of rights and they want to be freed of the duty to defend, when there's this provision saying that they have to defend and identify unless there is an underlying coverage? That's what they did here. They were able to go to court without receiving countrywide policy ahead of time. All their letters are based on, they know what's in countrywide policy. It's a standard motor carrier policy. And this is a standard trucker's policy that's issued by United Financial, aka Progressive. They know what's in it. That company has its own form. No, it's what's called an ISO form, Insurance Service Organization form. They use basically the same forms. They know what's in it. And that's what a court would say. Well, no, no. They would know what's in it. They want to know what's in it. In fact, the countrywide is not sending it. Well, they're saving the postage. That's because the standard in New York for determining whether a disclaimer is obligated to be sent is when did the carrier obtain sufficient facts or should obtain sufficient facts on which to base the disclaimer. And in this case, I submit that they knew as early as July 11, 2016, when they submitted a tender letter to Countrywide. That tender letter, Your Honor, reads virtually identical to the complaint that they filed in March of 2017. There's nothing new because they know what was what with this case. And yet they delayed. And under New York law, they're very strict about it. Did Countrywide's policy cover this occurrence? Arguably, it did. Arguably, it did. Arguably, it might not. So how can you say that they should be able to categorically take a position without saying the policy? That's what the court cases say. That's the case law in New York, Pistelli and Vinci. And, again, I maintain this issue about the insurance law not applying was not raised in the court below or properly preserved for appellate review. Their argument in the court below was that Countrywide lacked standing to raise their failure to serve a disclaimer. Now on appeal for the first time, when they raise it curiously on a footnote, footnote 14 in their brief, they shift their argument from lack of standing so that the law doesn't apply in the first place. That's a significantly different argument. And, you know, the district court didn't address it because it wasn't raised. Did you respond to it in your brief? We did. Well? We did. But we cited a case in the United States against Braunwig that our issue is not raised in the court below and that on appeal where there's a shifting of position and you raise for the first time an argument that was available but not pressed below are deemed to have been waived and won't be considered by this court. So we cited the case in our brief. Unless the Court has any questions, I'll rest my brief. Thank you. Your Honors, I'm not sure where to start, but I'm going to do my best. The ISO form that counsel was referring to is a standard form where my firm is certainly aware of it. Progressive happens not to use it, but we know what's in the standard form and had they told us we have a standard form, that's fine. I would have said, fine, please just send me the declarations pages because the declarations pages tell you which vehicles are covered and if there are any other relevant exclusions that have been added to the policy. So, yes, we probably could have assumed since there was a federal filing that they issued whatever standard form policy they used. But what we could not have known and, in fact, did not know in July 2016, January 2017, and in March 2017 when the D.J. was filed, in fact, until the policies were ultimately exchanged in the discovery below, we didn't know whether this vehicle that our driver, Mr. Pineda, was using qualified as a covered auto under their policy or not. And until we knew that, there was no basis for declination. Simple as that. Now, the notion, by the way, that the district court held that we learned about anything we needed to know in the January 13, 2017 letter from Countrywide. You're saying we really don't have to decide at all whether the rule on declination applies as between insurers. It's an issue that's not necessary. If you conclude, as we believe, which is why I was in a footnote, if you agree with us that there simply wasn't enough information here, then there's no need to decide that at all. We have cases saying we don't read footnotes. An issue preserved only in a footnote is waived. Well, the issue was, it's not a new issue. It's the same issue as we raised below. But, okay, if I may, the January 13 letter said, not quoted in full in counsel's brief, Countrywide Insurance hereby rejects your tender and hereby denies and disclaims coverage for Juan Pineda and T.F. Victors. T.F. Victors was not sued, so that's not relevant. But they explicitly denied coverage to Pineda. This is seven or eight months after the loss. By the way, the J.T. Megan case that counsel refers to, I think he has exactly backwards. What that case said is if insurance company A tenders to insurance company B, then we tender to them, then insurance company B better respond quickly or they violate 3420. The notion that somehow when we tendered to them, we didn't comply with 3420 is bizarre. That's not what this case is about anyway. It's hard to see how receiving a letter that denies coverage for the man who's being sued somehow gave you everything you needed to know for you to decline coverage. That just about sums it up, Your Honor. Thank you very much. Thank you both. We'll take it under advisement.